**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DENNIS J. MAIMAN,<br><br>Plaintiff,<br><br>AMERICAN POSTAL WORKERS UNION<br><br>Involuntary Plaintiff,<br><br>v.<br><br>SIG SAUER, INC., AMMUNITION<br>OPERATIONS, LLC d/b/a<br>REMINGTON AMMUNITION,<br><br>Defendants. | Civil Case Number: 2:24-cv-00963-WED |

**DEFENDANT SIG SAUER INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPELL**

The Court should deny Plaintiff's Motion to Compel because the evidence sought is not relevant to any claim or defense in this case nor proportional to the needs of the case, especially considering the voluminous documents already produced by Defendant Sig Sauer Inc. (hereafter "Sig Sauer" or "Defendant"). Plaintiff's allegation that the barrel of his P938 pistol ruptured because of the caliber markings on the *barrel* has nothing to do with the *slide* or *frame* of the pistol, making any prototype drawings of either part wholly irrelevant to his claim. Moreover, Sig Sauer is already over-producing documents considering the proper scope of discovery in this case and has provided drawings for every P938 barrel, slide, and frame revision that has ever been produced, including the drawings for the pistol at issue in this case, as well as all production barrel drawings for the P238 and P365, two pistols unrelated to the instant case. Finally, the information Plaintiff claims to be seeking regarding known hazards and reasons for certain design decisions

1

are not contained in engineering drawings. In short, Plaintiff's discovery request represents not just a "fishing expedition," but an effort to "drain the pond and collect the fish from the bottom." See *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (quoting *IBM Peripheral EDP Devices Antitrust Litig.*, 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)).

## I. BACKGROUND

Plaintiff was injured when an over-pressured round of ammunition caused the barrel of his Sig Sauer P938 pistol to rupture. Dkt 51, p. 2. While acknowledging an over-pressured round manufactured by co-defendant Ammunition Operations, LLC's d/b/a Remington Ammunition ("Remington") caused the rupture, Plaintiff by and through its disclosed engineering expert Clarence Kemper, contends that "[t]he Sig Sauer P938 9mm pistol is defective in design because Sig Sauer placed engraving of the identifier, '9MM PARA,' at the location of the highest stresses in the barrel." Dkt 51, p. 2. Nowhere in Mr. Kemper's 60-page report does he find any fault with the design of the P938 slide or frame. *See generally* Dkt 51-1.

The Permanent International Commission for the Proof of Small Arms ("CIP")[1] is an international organization of countries from Europe, South America, and the Middle East that governs the sale and testing of firearms sold in its member countries. Ex. A. CIP regulations require that any firearm sold in a CIP member nation have the weapon's caliber marked on its **barrel**. Ex. B, Art. 4. Since its release, Sig Sauer has sold more than 1100 P938 pistols to CIP countries governed by these regulations. Ex. C, pp. 62:15 – 66:22.

Plaintiff has propounded six sets of Requests for Production, totaling 118 individual requests, excluding subparts. Ex. D. In response to multiple requests for engineering drawings, Sig

---

[1] The organization is commonly abbreviated as CIP in accordance with the French translation of its name, "Commission Internationale Permanente Pour L'epreuve Des Arms A Feu Portatives"

Sauer has provided every revision of every production-level engineering drawing for the Sig Sauer P938 barrel, slide, and frame, as well as all revisions of the production drawings for the barrels of the Sig Sauer P238 and Sig Sauer P365. Ex. E, p. 3; Ex. F, p. 3.

## II. LAW

Federal Rule of Civil Procedure 26(b)(1) limits discovery to information "relevant to the claim or defense of any party." While relevancy in the discovery context is broader than in the context of admissibility, courts have cautioned that this "legal tenet . . . should not be misapplied so as to allow fishing expeditions in discovery." *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 224 (N.D. Ill. 1997). "No party seeking information is entitled to roam an adversary's files" or "explore matter which does not appear germane merely on the theory that it might become so." *Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 118 (N.D. Ind. 1991)* (citations omitted).

## III. ARGUMENT

**A. Slide and Frame Engineering Drawings are Completely Irrelevant to Plaintiff's Allegations**

The P938 *slide* and *frame* are completely irrelevant to Plaintiff's claim that the incident was caused because of a defectively designed *barrel*. As discussed above, Plaintiff contends that the P938 barrel was defectively designed because it included caliber markings on the side of the barrel. Dkt 49; Dkt 51, p. 2. This theory of liability has nothing to do with the slide or frame which are separate and distinct parts of the pistol with their own individual engineering drawings.

3



After Sig Sauer provided the engineering drawings for every production level revision of the P938 frame and slide, and after inspecting the subject pistol on multiple occasions, Plaintiff's experts made no argument that either the frame or the slide was defective in this case or had anything to do with the cause of the incident. See generally Dkt 51. Rather, Plaintiff contends that the barrel was defective, which is why it ruptured. Dkt 51, p. 2-3. In product liability cases, the alleged defective component is essential to determine the reasonable scope of discovery. See *Butkowski v. Gen. Motors Corp.*, 497 F.2d 1158 (2d Cir. 1974) (denying motion to compel discovery concerning an entirely different defect from the one Plaintiff claimed caused the accident); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992) (noting that discovery is properly denied when a "plaintiff sought information about a vehicle recall, but the models recalled did not have the same

4

component part as the one at issue in the litigation"). *See also McAnneny v. Smith & Nephew, Inc.*, No. 3:17CV00012 (AWT), 2018 WL 1383400, at *6 (D. Conn. Mar. 19, 2018). Since Plaintiff does not even contend that either the frame or the slide was defective or had any role in causing the accident at issue in this case, the prototype drawings for those components are irrelevant and not proportional to the needs of the case. *See* Lutes v. Kawasaki Motors Corp., USA, No. 3:10CV1549 WWE, 2014 WL 7185469, at *7 (D. Conn. Dec. 16, 2014) (denying a motion to compel a response to an interrogatory that was "overly broad in scope" because it did not "implicate a 'recessed hook,' which [was] the focal point of [the] litigation").

**B. Prototype Engineering Drawings are Neither Relevant to Plaintiff's Allegations, nor Proportional to the Needs of the Case**

*1) Sig Sauer has Already Over-Produced Barrel Drawings in a Good Faith Effort to Satisfy Plaintiff's Demands*

Sig Sauer initially provided Plaintiff with all revisions of the P938 barrel, slide, and frame drawings produced for production, including the specific revisions of the drawings that were in effect when the subject pistol was manufactured. Ex. E, p. 3. In a good faith effort to appease Plaintiff's request for additional barrel drawings, Sig Sauer further agreed to provide all production level drawings for the Sig Sauer P238 and P365 pistols, neither of which is substantially similar to the subject pistol.[2] Ex. F, p. 3. However, Sig Sauer's good faith attempts to appease Plaintiff's overbroad requests for more engineering drawings failed to satisfy Plaintiff, who is now seeking prototype drawings of barrels, slides, and frames that were never produced for sale to the public. Plaintiff provides no explanation for why the information he claims to be seeking cannot be

---

[2] The P238 uses a different caliber bullet than the P938, and the P365 is a striker-fired pistol having a completely different firing mechanism than the hammer-fired P938.

obtained through the dozens of revisions of drawings Sig Sauer has already provided. Instead, Plaintiff continues to request more confidential materials from Sig Sauer under the theory that they may include relevant information. *See Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118 (N.D. Ind. 1991) (citations omitted). ("No party seeking information is entitled to roam an adversary's files" or "explore matter which does not appear germane merely on the theory that it might become so.").

### *2) Prototype Drawings Are Highly Confidential and their Disclosure is Not Proportional to the Needs of the Case*

Prototype drawings are, by definition, even more sensitive than production-level drawings because prototypes are not released to the public. Once a product is released to the public, competitors can purchase it and attempt to reverse-engineer it, thereby inherently reducing the competitive advantage created by the manufacturer's investments in engineering and design. However, the same is not true for prototype designs that have never been produced for sale. This difference further exemplifies the fact that Plaintiff's requests for prototype drawings are not only irrelevant, but also not proportional to the needs of the case.

### *3) The Information Plaintiff Claims to Be Seeking is Not Contained in Engineering Drawings*

Engineering drawings are simply blueprints for how to make a particular product. They do not include risk assessments, the rationale for design choices, hazard identification, or safety feature analysis. Most importantly for purposes of Plaintiff's theory of liability and relevance to the case, the engineering drawings do not include any discussion regarding why Sig Sauer decided to include the caliber markings on the barrel of the P938.

6

As discussed above, the caliber markings on the barrel were included because CIP regulations required Sig Sauer to do so. Ex. B, art. 4. Indeed, Sig Sauer has already provided the design decision information Plaintiff claims to be seeking in the form of numerous change orders, documents, and depositions of the P938's lead design engineer, Sig Sauer's Vice President of quality control, and Sig Sauer's corporate designee. In short, the prototype engineering drawings simply lay out the design of barrels, slides, and frames that were not included in Plaintiff's P938 nor ever put into production and are therefore neither relevant nor proportional to the needs of this case.

WHEREFORE, Defendant, Sig Sauer Inc., respectfully requests that the Court deny Plaintiff's motion to compel in its entirety.

Dated this 15th day of April 2026.

Respectfully submitted,

**LITTLETON JOYCE UGHETTA & KELLY LLP**

/s/Christopher A. Monson
Brian Keith Gibson
Kristen E. Dennison
Christopher A. Monson
Jackson K. Thomas
4 Manhattanville Road, Suite 202
Purchase, New York 10577
P: 914-417-3400
F: 914-417-3401

and

**GASS TUREK LLC**

Richard T. Orton (WI SBN 1075733)
Joshua S. Greenberg (WI SBN 1107959)
241 N. Broadway, Suite 300

7

Milwaukee, Wisconsin 53202
P: 414-223-3300
F: 414-224-6116


*Attorneys for Defendant, Sig Sauer, Inc.*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2026, a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure:

Thadd J. Llaurado
Michelle M. Hockers
Kathryn Llaurado Scheidt
MURPHY & PRACHTHAUSER, S.C.
330 E. Kilbourn Ave., Ste. 1200
Milwaukee, WI 53202
tlaurado@murphyprachthauser.com
mhockers@murphyprachthauser.com
kllaurado@murphyprachthauser.com
*Attorneys for Plaintiff, Dennis J. Maiman*

Anthony M. Pisciotti
Danny C. Lallis
PISCIOTTI LALLIS ERDEICH
30A Vreeland Ave., Ste. 300
Florham Park, NJ 07932
apisciott@pisciotti.com
dlallis@pisciotti.com
*Attorneys for Defendant,*
*Ammunition Operations, LLC*

Patrick D. McNally
Matthew L. Granitz
BORGELT, POWELL, PETERSON & FRAUEN, S.C.
1243 N. 10th St., Ste. 300
Milwaukee, WI 53205
pmcnally@borgelt.com
mgranitz@borgelt.com
*Attorneys for Defendant,*
*Ammunition Operations, LLC*

*/s/Christopher A. Monson*

9